# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RICARDO ANEZ,

                Petitioner,        Civil Action No. 06-253 Erie

    v.

                                    District Judge McLaughlin
JAMES SHERMAN,                        Chief Magistrate Judge Baxter

                Respondent.

## MEMORANDUM ORDER

This habeas action filed pursuant to 28 U.S.C. § 2241 was referred to Chief United States Magistrate Judge Susan Paradise Baxter for a report and recommendation in accordance with 28 U.S.C. § 636(b)(1), and Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrate Judges.

In his petition for writ of habeas corpus before this Court, Petitioner contends that the Bureau of Prisons (the "BOP") erred when it calculated his federal sentence. On October 9, 2007, Magistrate Judge Baxter issued a Report and Recommendation (Doc. No. 18) recommending that the petition be denied. Petitioner has filed Objections to the Report and Recommendation. (Doc. No. 20). Where, as here, objections have been filed, the Court is required to make a *de novo* determination as to those portions of the Report and Recommendation to which objections were made. See 28 U.S.C.§ 636(b)(1).

We have carefully examined *de novo* all claims raised by Petitioner in his objections and find that they have no merit. We write only to address his contention that the BOP should have computed his sentence to have commenced on the date it was imposed – April 12, 2000. He requests that we order the production of his state bail hearing transcripts so that he can support his allegation that he was in primary federal custody on that date. (Doc. No. 21). His request is denied because, as explained below, his allegations are refuted by the records submitted by Respondent, which demonstrate that he was in the primary custody of the State of Ohio on the

1

date his federal sentence was imposed.

# I.

18 U.S.C. 3585(a) governs the date upon which a federal sentence commences. It provides:

> (a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant *is received in custody awaiting transportation to,* or arrives voluntarily to commence service of sentence at, *the official detention facility at which the sentence is to be served.*

18 U.S.C. § 3585(a) (emphasis added). A federal sentence cannot commence earlier than the date on which it was imposed. See e.g., United States v. LaBeille-Soto, 163 F.3d 93, 98 (2nd Cir. 1998); Shelvy v. Whitfield, 718 F.2d 441, 444 (D.C. Cir. 1983); see also BOP Program Statement 5880.28, Sentence Computation Manual, Chapt. I.3, Page 13.

BOP policy regarding the application of 18 U.S.C. § 3585(a) is set forth in Program Statement 5880.28, Sentence Computation Manual, Chapter I.3 at Pages 12-13. It instructs:

> If the prisoner is serving no other federal sentence at the time the sentence is imposed, and is in exclusive federal custody (not under the jurisdiction of a federal writ of habeas corpus ad prosequendum) at the time of sentencing on the basis of the conviction for which the sentence is imposed, the sentence commences on the date of imposition, even if a state sentence is running along concurrently.

BOP Program Statement 5880.28, Chapt. I.3 at Page 12 (emphasis in original). This policy is an application of the common law doctrine regarding priority of custody that was adopted to provide an orderly method by which to prosecute an individual that has violated the law of more than one sovereign. The doctrine was first recognized by the United States Supreme Court in Ponzi v. Fessenden, 258 U.S. 254 (1922). See e.g., Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982); Chambers v. Holland, 920 F.Supp. 618, 621 (M.D. Pa.), aff'd, 100 F.3d 946 (3d Cir. 1996). It was developed to promote comity, mutual assistance, and orderly procedure. Its purpose is not to provide a prisoner with the means to avoid serving time on sentences to which he is subject. Bowman, 672 F.2d at 1153-54 (prisoners "are not the beneficiaries of the rule

allocating priority of prosecution to the sovereignty which first takes custody of a person.")

In relevant part, the doctrine provides that the sovereign that first arrests an individual has primary control, or custody, over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him, and it is entitled to have him serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction. See e.g., Bowman, 672 F.2d at 1153. Primary custody remains vested in the sovereign that first arrests the individual until it "relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence." Chambers, 920 F.Supp. at 622 (citations omitted). The determination of priority of custody between a state and the federal government is to be resolved by the executive branches of the two sovereigns. United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980) (citing Ponzi, 258 U.S. at 261-62).

The BOP has incorporated the common law doctrine into its policies. Thus, when a federal district court sentences a prisoner who at the time is in the primary custody of a state, the prisoner generally will be returned to the state after federal sentencing and the BOP will commence the prisoner's federal sentence when the state relinquishes its custody and releases the prisoner to federal custody.[1] 18 U.S.C. § 3585(a); see also BOP Program Statement 5880.28, Chapt. I.3 at Pages 12-13, 31–33. On the other hand, when a prisoner is in the primary custody of the federal government on the date his federal sentence is imposed, the BOP will deem the sentence to have commenced on that date ("even if a state sentence is running along concurrently"). BOP Program Statement 5880.28, Chapt. I.3 at Page 12.

---

[1] Different rules apply when the federal district court has directed that the prisoner's sentence be served *concurrent* to a state sentence. When a *concurrent* federal sentence is imposed upon a prisoner who is in primary state custody, the BOP will calculate the prisoner's federal sentence to have commenced on the date the federal court imposed it, and it will designate the state correctional institutional as the facility for service of the inmate's federal sentence. See 18 U.S.C. § 3584(a); 18 U.S.C. § 3621(b); BOP Program Statement 5880.28, Chapt. I.3 at Pages 31-33. In this case, the United States District Judge who sentenced Petitioner, the Honorable John W. Potter of the Northern District of Ohio, *did not direct* that his federal sentence be served concurrent with any state sentence. (Doc. No. 9, Ex. 2 at ¶ 6; Ex. 2e; see also United States v. Ricardo Anes, Case No. 99-CR-706, slip op. at p. 3 n.3 (N.D. OH Sept. 20, 2004) (Doc. No. 329) (in which Judge Potter denied Petitioner's motion to modify his federal sentence, stating: "There is no indication that the Court's intent, expressed or unexpressed, was for defendant's state and federal sentences to run concurrently.") Therefore, the BOP properly concluded that Petitioner's federal sentence was to be served *consecutive* to the state sentence.

3

Petitioner contends that he was in federal custody on the date his federal sentence was imposed (April 12, 2000) and that therefore the BOP should have commenced his sentence on that date. He argues that the State of Ohio relinquished primary custody of him to federal authorities on Friday, January 29, 1999 because on that date the state court judge issued an order setting bond.[2] He insists that the Wood County (Ohio) Jail authorities refused to release him on bond *solely* because of the issuance of a federal detainer. As a result, he maintains, the state/local officials were merely holding him for federal officials and so from January 29, 1999 forward he was in the primary custody of the federal government.

The records submitted by Respondent and the federal case and docket information available for review on Public Access to Court Electronic Records ("PACER") refute Petitioner's allegations. They demonstrate that the federal arrest warrant was not issued until Wednesday, February 3, 1999. (Doc. No. 12, Ex. 1 at ¶ 4 (referencing the docket of United States v. Ricardo Anes, Case No. 99-CR-706 (N.D. OH)). Therefore, a federal warrant or detainer could not have been the reason he was not released on bond on January 29, 1999.

Additionally, the conduct of the state and federal authorities also refute Petitioner's allegations. They consistently operated under the understanding that the state had primary custody over Petitioner. When the United States Marshals Service ("USMS") obtained physical custody of Petitioner from the state on February 11, 1999, it did so pursuant to a writ of habeas corpus ad prosequendum. (Doc. No. 9, Ex. 2 at ¶ 4(e); Ex. 2c). "A prisoner detained pursuant to a writ ad prosequendum is considered to remain in the primary custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the person. The receiving sovereign-in this case, the federal government-is, therefore, considered simply to be 'borrowing'

---

[2] On or around December 22, 1998, officers of the Wood County, Ohio, Police Department arrested Petitioner and charged him with the state offenses of felonious assault and assault. (Doc. No. 9, Ex. 2 at ¶ 4a; Ex. 2b). The following day, the Honorable Charles F. Kurfess of the Wood County Court of Common Pleas set bond and he was released. (Id., Ex. 1b at 6; Ex. 2b at 4). On January 4, 1999 his bond was revoked and a warrant was issued for his arrest. (Id., Ex. 2b at 5). On January 19, 1999, he was arrested by Wood County authorities. (Id., Ex. 2b at 5; Ex. 2 at ¶¶ 4c-d).

4

the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and sentencing him." Ruggiano v. Reish, 307 F.3d 121, 125 n.1 (3d Cir. 2002) (citations omitted). On February 23, 1999, the USMS returned him to the Wood County Jail in satisfaction of the writ. (Doc. No. 9, Ex. 2 at ¶ 4g). On March 29, 1999, a jury empaneled by the Court of Common Pleas of Wood County convicted Petitioner on the state criminal charges of felonious assault and assault. (Id. at ¶ 4h). On May 24, 1999, the state court sentenced him to four years incarceration. (Id. at ¶ 4i; Ex. 2b at 13-14). On November 30, 1999, the USMS once again borrowed him from the state pursuant to a federal writ of habeas corpus ad prosequendum. (Id. at ¶ 4k). He pleaded guilty to the outstanding federal charges and on April 12, 2000, Judge Potter sentenced him. (Id. at ¶ 4m; Ex. 2e). On April 18, 2000, the USMS returned him to state authorities in satisfaction of the federal writ of habeas corpus ad prosequendum and it lodged a detainer with the state requesting that it release Petitioner to federal custody once he satisfied his obligation to the state. (Id. at ¶ 4(o); Ex. 2c).

Since the determination of priority of custody is a matter resolved by the state and federal executive branches, the manner in which they handled Petitioner is evidence as to which sovereign had primary custody over him. In this case, each sovereign's conduct with regard to Petitioner demonstrates that he remained in the primary custody of the State of Ohio until it released him on December 18, 2002 in satisfaction of his state sentence.

In conclusion, the BOP Policy set forth in Program Statement 5880.28 that directs that a prisoner's federal sentence commences upon imposition if he "is in exclusive federal custody (not under the jurisdiction of a federal writ of habeas corpus ad prosequendum)," does not apply to Petitioner. On December 18, 2002, he was "received in custody awaiting transportation to" a federal facility to serve his federal sentence and the BOP properly calculated his sentence to have commenced on that date pursuant to 18 U.S.C. § 3585(a).

Petitioner also challenges Chief Magistrate Judge Baxter's determination that the BOP properly calculated his prior custody credit under 18 U.S.C. § 3585(b). His objections have no

5

merit and he is not entitled to the challenged prior custody credit for the reasons set forth in the Report and Recommendation.

**II.**

AND NOW, this 17th day of December, 2007;

Following a *de novo* review of the pleadings and record in this case,

IT IS HEREBY ORDERED that the Report and Recommendation by Chief Magistrate Judge Baxter be adopted as the opinion of this Court as supplemented herein.

IT IS FURTHER ORDERED that the Clerk of Courts is directed to close this case.

                                                                                               _____
                                                                                               SEAN J. MCLAUGHLIN
                                                                                               UNITED STATES DISTRICT JUDGE

cc:    All counsel of record
       Chief U.S. Magistrate Judge Baxter